## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION

### CIVIL ACTION NO. 1:06-CV-092

**OSCAR CHERRY**                                                                                   **PLAINTIFF**

**V.**

**CITY OF BOWLING GREEN, KENTUCKY**                                  **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by the Defendant for summary judgment. [DN 45]. Fully briefed, this matter is ripe for decision. For the following reasons, the Defendant's motion is **GRANTED**.

### I. FACTS

The Plaintiff, Oscar Cherry ("Cherry"), began working for the Bowling Green Fire Department in 1977. In May 2005, when he was then a deputy chief, the Defendant, the City of Bowling Green ("the City"), preferred charges against him for the unauthorized use of a City credit card for personal charges. The City Commission found Plaintiff guilty of two of the four charges and suspended him for two weeks and required him to provide restitution. The Plaintiff has stated that he is not challenging the punishment imposed by the City Commission in this action. However, upon the Plaintiff's return to work, Fire Chief Gerry Brown issued two memoranda - on May 23, 2005, and May 27, 2005 - which imposed further work restrictions upon the Plaintiff. The memoranda provided, among other things, that the Plaintiff could not assume the duties of fire chief in the Chief's absence; that his office location had been moved to the Westside Fire Station - where fleet maintenance, of which the Plaintiff was in charge, was headquartered; and that he was relieved of any and all emergency scene responsibilities.

On August 1, 2006, Chief Brown resigned. Pending the identification and selection of a permanent replacement, Chief Brown assigned fire chief duties to an interim chief. The interim chief declined to lift the orders that had been imposed upon the Plaintiff by Chief Brown. The Plaintiff was one of three candidates who sought to succeed Chief Brown as Fire Chief. However, he was not selected and Greg Johnson assumed the duties of fire chief on December 1, 2006.

Shortly after Johnson became chief, he lifted the orders that had been imposed upon the Plaintiff by Chief Brown. A news report concerning this action appeared in the local Bowling Green newspaper on December 16, 2006. In this article, Plaintiff was quoted as criticizing both Chief Johnson and the City. As a result, on December 20, 2006, Chief Johnson conducted a "verbal counseling session" with the Plaintiff over his comments. At the meeting, with the City's Human Resources Director present, Chief Johnson admonished the Plaintiff for violating city policies that prohibit speaking disrespectfully about or ridiculing city employees or officials. Shortly thereafter, the Plaintiff resigned.

In this action, which was brought under 42 U.S.C. § 1983, the Plaintiff claims that both his constitutionally and statutorily protected rights were violated by the work restrictions imposed upon him by Chief Brown; the selection process used to hire a new chief; and the verbal counseling session undertaken by Chief Johnson. The City has moved for summary judgment on all claims.

## II. LEGAL STANDARD

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of

identifying the portion of the record which demonstrates the absence of a genuine issue of material facts. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party themselves thereafter must produce specific facts demonstrating that a genuine issue of fact exists for trial. <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Co.</u>, 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of scintilla of evidence in support of the [non-moving party's] position will be insufficient, there must be evidence on which the jury could reasonably find for the [non-moving party]." <u>Anderson</u>, 477. U.S. at 252.

### III. ANALYSIS

**A. The Work Restrictions**

**1. § 1983 and the Statute of Limitations**

The Plaintiff contends that the work restrictions imposed upon him by Chief Brown in May 2005 amounted to a deprivation of his rights without due process of law; were in retaliation for his reporting that other City employees had misused the City credit card; and had the effect of a constructive discharge because they made his work conditions so intolerable that he felt compelled to resign. The City argues that these claims fail as a matter of law because the applicable statute of limitations had run before the Plaintiff filed suit. The Court agrees.

While the duration of the statute of limitations for § 1983 actions is governed by state law,

federal standards govern when the statute begins to run. Sharpe v. Cureton, 319 F.3d 259, 266 (6th Cir. 2002). Section 1983 actions in Kentucky are limited by the one-year statute of limitations found in § 413.140(1)(a). Collard v. Kentucky Board of Nursing, 896 F.2d 179, 182 (6th Cir. 1990). Ordinarily, "the 'discovery rule' applies to establish the date on which the statute of limitations begins to run, i.e., the date when the plaintiff knows or through the exercise of reasonable diligence should have known of the injury that form the basis for his action." Sharpe, 319 F.3d at 266 (quoting Sevier v. Turner, 742 F.2d 262, 273 (6th Cir. 1986)). "The test is an objective one, and the Court determines 'what event should have alerted the typical lay person to protect his or her rights.'" Id. (quoting Dixon v. Anderson, 928 F.2d 212, 215 (6th Cir. 1991)).

The work restrictions that are the subject of this action were imposed by Chief Brown in May 2005. However, the Plaintiff did not file suit until June 13, 2006. The Plaintiff argues, however, that his claim is not time-barred because the work restrictions constituted "continuing violations" of his rights because they were originally imposed upon him in May 2005, but they were not lifted until December 2006, when Greg Johnson assumed the duties of fire chief.

This argument, however, was considered and rejected by the Sixth Circuit in Sharpe v. Cureton. 319 F.3d 259. In Sharpe, five firefighters alleged that they had been transferred to undesirable locations in retaliation for their support of the mayor's former opponent. The firefighters learned of their transfers in September 1995, but did not bring suit until October 1996. They argued that their claim was not time-barred because it fit within the first category of Sixth Circuit's continuing violations doctrine since there was "some evidence of present discriminatory activity giving rise to a claim of a continuing violation such as where an employer continues to presently impose disparate work assignments or gives unequal pay for equal work." Id. at 266-267 (quoting

Burzynski v. Cohen, 264 F.3d 611, 618 (6th Cir. 2001)). The court, however, disagreed. It held that the firefighters' claims relating to retaliatory transfers were time-barred because they involved discrete acts of which the firefighters were made aware on specific dates in September 1995. Sharpe, 316 F.3d at 268. This conclusion comports with the rule that a "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." Tolbert v. Ohio State Dept. of Transportation, 172 F.3d 934, 940 (6th Cir. 1999); see also Brooks v. City of Springfield, 2008 U.S. Dist. LEXIS 58302 *33 (M.D. Tenn. 2008)(holding that a city's requirement that a meter-reader provide a doctor's note for each absence was not a continuing violation because the requirement "was based upon a single decision of which the meter-reader was well aware").

Thus, the Court concludes that the Plaintiff's § 1983 claims which are premised upon the work restrictions imposed by Chief Brown are time-barred because the imposition of the work restrictions involved two discrete acts of which the Plaintiff was immediately aware on specific dates in May 2005. Accordingly, because there are no material facts in dispute, the Court concludes that the City is entitled to judgment as a matter of law on these claims.

**2. K.R.S. § 95.450**

The Plaintiff also claims that the work restrictions imposed upon him by Chief Brown were in violation of K.R.S. § 95.450. This statute provides that firefighters may not be "reprimanded, dismissed, suspended, or reduced in grade or pay for any reason except inefficiency, misconduct, insubordination or violation of the law or of the rules adopted by the legislative body, and only after charges are preferred and a hearing conducted as provided in this section." K.R.S. § 95.450(1). The statute goes on to provide for a hearing wherein the accused may call witnesses and present evidence. K.R.S. § 95.450.

The Plaintiff argues that the rights guaranteed him by this statute were violated by the work restrictions because they were imposed by Chief Brown, and not the mayor, and without the requisite hearing. However, K.R.S. § 95.450 only prohibits the reprimanding, dismissal, suspension, or reduction in grade or pay of a firefighter without the process set forth in the statute. There is no evidence which suggests that the work restrictions constituted any of these actions. See e.g. Hockensmith v. City of Frankfort, 723 S.W.2d 855 (Ky. App. 1986)(holding that the term "reprimand" in the statute does not include a reprimand by a superior officer to a subordinate officer). For this reason, the Court concludes that the Defendant is entitled to judgment as a matter of law on this claim as well.

**B. The Hiring Procedure**

The Plaintiff also contends that his procedural due process rights were violated by the selection process the City used to hire a new chief. To support this argument, the Plaintiff points to the fact that the selection process was administered differently than it had been before because there was no written test and because the candidates were required to go through a series of psychological tests.

To state a claim under § 1983, a plaintiff must show two things: 1) that the defendant acted under color of state law; and 2) that the defendant deprived the plaintiff of a federal right, either statutory or constitutional. Bacon v. Patera, 772 F.2d 259, 263 (6th Cir. 1985). To prevail on a procedural due process claim under § 1983, a plaintiff must 1) demonstrate that he has been deprived of property as a result of an established state procedure that itself violates due process rights; or 2) prove that the defendant deprived him of property pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate for the loss.

D'Amico v. City of Strongsville, 59 Fed. Appx. 675, 676 (6th Cir. 2003)(citing Macene v. MJW, Inc., 951 F.2d 700, 706 (6th Cir. 1991).

The Plaintiff's claim seems to go to the process that denied him a promotion. However, while it is clear that the Defendants acted under the color of state law when they failed to promote him, the Plaintiff has failed to show that he was deprived of property interest in this process. The Supreme Court has stated: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. at 677 (quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)). Further, "if an official has unconstrained discretion to deny the benefit, a prospective recipient of that benefit can establish no more than a 'unilateral expectation' to it." Id. (quoting Med. Corp., Inc. v. City of Lima, 296 F.3d 404, 410 (6th Cir. 2002)). Indeed, to establish an "entitlement" to receive a benefit, such as a promotion, the relationship between the hiring authority and the candidate must contain "mutually explicit" understandings to that effect. Id.

Accordingly, the Court holds that the City is entitled to judgment as a matter of law on this claim because the Plaintiff has failed to establish that he was deprived of a property interest when he was not selected to be the new fire chief.

**C. The Verbal Counseling Session**

Finally, the Plaintiff claims that the "verbal counseling session" Chief Johnson had with the Plaintiff, after the Plaintiff criticized the Bowling Green Fire Department in the newspaper, was undertaken in retaliation for his filing of a lawsuit against the City and had the effect of constructively discharging the Plaintiff.

7

### 1. Retaliation

There are three elements to a retaliation claim: 1) the plaintiff was engaged in a constitutionally-protected activity; 2) an adverse action by the defendant caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and 3) the adverse action was motivated, at least in part, as a response to the exercise of the plaintiff's constitutional rights. Jenkins v. Rock Hill Local School Dist., 513 F.3d 580, 585-586 (6th Cir. 2008).

Here, the Court need not determine whether the Plaintiff's filing of a lawsuit against the City was a protected activity or whether the verbal counseling session constituted an adverse action because there is no evidence which suggests that the Chief Johnson's decision to have a counseling session with the Plaintiff was motivated by the Plaintiff's suit against the City. Indeed, the only evidence which supports the Plaintiff's claims that there was a causal link between the verbal counseling session and his suit against the City is the fact the counseling session occurred a little more than six months after he filed suit. The Court holds that this time period does not support a claim of retaliation. See, e.g., Kelly v. Municipal Courts of Marion County, 97 F.3d 902, 912 (7th Cir. 1996)(holding that a four-month period between protected activity and the alleged adverse action did not support claim of retaliation); Benson v. Cady, 761 F.2d 335, 342 (7th Cir. 1985)(concluding that a period of five months between the filing of the complaint and the alleged retaliation was insufficient to support a claim of retaliation). Indeed, the Sixth Circuit has held that when "some time lapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." Mickey v. Zeidler Tool & Die Co., 516 F.3d

516, 525 (6th Cir. 2008). Thus, the Court concludes that the Defendant is entitled to judgment as a matter of law on this claim.

### 2. Constructive Discharge

Lastly, the Plaintiff seems to contend that the verbal counseling session he had with Chief Johnson amounted to a constructive discharge. He contends that these actions were calculated to make his employment so intolerable that he would feel compelled to resign. However, constructive discharge from employment is not itself a cause of action; first, there must be an underlying action for employment discrimination. <u>Starks v. New Par</u>, 1999 U.S App. LEXIS 9145 *15 (6th Cir. 1999). Because there is no such underlying claim, the Court concludes that City is entitled to judgment as a matter of law on this claim as well.

### IV. CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment is **GRANTED**. **IT IS SO ORDERED**.

cc: Counsel of Record